UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARA ROBINSON, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>STOCKTON UNIFIED SCHOOL DISTRICT, et al.,<br><br>        Defendants. | No. 2:16-cv-02111-KJM-GGH<br><br>FINDINGS AND RECOMMENDATIONS; ORDER |

FACTUAL SUMMARY

Plaintiff Cara Robinson ["Cara"] filed the First Amended Complaint in this action on April 16, 2018. ECF No. 46. Plaintiff sues the Stockton Unified School District, id. at ¶ 7, Christopher Anderson, the principal of Jane Frederick High School ["Jane Frederick"], id. at ¶ 8, and Stockton Police Officer Darren Sandoval. Id. at ¶ 9.

The facts underlying the Complaint involve the September 16, 2014, theft of a cell phone from one of the students at the High School, id. at ¶¶ 15-20, which is an alternative school populated by students who have struggled with attendance, grades and behavioral issues. Id. at ¶ 10. On September 17, 2014, the day after the incident plaintiff explained what had occurred to

her counselor, id. at ¶ 26, and denied involvement in the theft. Id. at ¶ 25. On September 18, 2014, plaintiff was summoned to the principal's office where she was confronted by defendants Anderson and Sandoval and told to explain the incident. Id. at ¶¶ 27-29. Plaintiff was a minor at this time and asked to be able to place a telephone call to her mother but the request was refused. Id. at ¶ 30. Defendant Sandoval then placed her in handcuffs and she was taken to juvenile hall where she spent five (5) nights. Id. at ¶¶ 31-32. At her first court appearance the District Attorney announced there was no basis upon which to prosecute her and she was released. Id. at 32. Thereafter plaintiff was denied readmission to Jane Frederick because, as stated by defendant Anderson, she could no longer attend because she had "left in handcuffs," id. at ¶ 39, was turned away by the County School to which she was referred after being given a notice of suspension by defendant Anderson, id. at 37, without explanation, id. at ¶ 46, and her recent admission to Stockton High School was withdrawn because she had been referred to the County School. Id. at ¶ 45. Plaintiff Cara Robinson was unable to finish her senior year of high school and did not receive a diploma or equivalent indicia of graduation. Id. at ¶ 49.

In the weeks succeeding plaintiff's suspension and, ultimately her apparent expulsion, from Jane Frederick, plaintiff's parents, Ronny and Carolyn Hawkins Robinson, contacted school and district officials both in person and in writing seeking an opportunity to have a hearing regarding the apparent expulsion of their daughter pursuant to California Education Code Section 48918(a)(1) to no avail. Id. at ¶¶ 41-44. Cara's claim against the District seeks both damages and to have her record of suspension or expulsion expunged. Id. at p. 9:3-4. She seeks general damages from defendant Sandoval and punitive damages from defendant Anderson.

## SUMMARY OF CLAIMS

Plaintiff sues defendant Sandoval pursuant to 42 U.S.C. section 1983 alleging violation of her right be free of unlawful seizure under the Fourth Amendment, id. at ¶¶ 50-55, and the Stockton Unified School District and principal Christopher Anderson in his individual capacity pursuant to the Fourteenth Amendment right to procedural due process. Id. at p. 8:26-9:6. With regard to the District's and defendant Anderson's alleged denial of due process of law she conjunctively asserts a violation of her right to a free public education and seeks an injunction to

clear her record of the suspension/expulsion she claims.

## DEFENDANTS' MOTIONS TO DISMISS

A.  <u>Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(4); 12(b)(6)</u>

As pointed out by defendants, a motion to dismiss pursuant to Rule 12(b)(4) seeks dismissal because of insufficient process. There is no need to detail standards for this type of motion here.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. <u>See</u> <u>Ileto v. Glock</u>, Inc., 349 F.3d 1191, 1199–1200 (9th Cir.2003). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts under the cognizable theory stated. <u>See</u> <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir.2001). Thus, in reviewing a Rule 12(b)(6) motion, the Court will only ascertain whether the nonmoving party has sufficiently alleged claims that would entitle him or her to relief. <u>Jackson v. Carey</u>, 353 F.3d 750, 756 (9th Cir.2003). In doing so, the Court assumes the truth of all factual allegations and construes factual allegations in the light most favorable to the nonmoving party. <u>See</u> <u>Gompper v. VISX, Inc.</u>, 298 F.3d 893, 895 (9th Cir.2002).

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" rather it must contain factual allegations sufficient to "raise a right to relief above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 545 (2007). "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." <u>Id.</u>, *quoting* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed.2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) *quoting* <u>Twombly</u>, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>

Based upon the summary of allegations stated above the court has determined that the First Amended Complaint recites sufficient facts to state claims against both the District

3

defendants and defendant Sandoval with specific exceptions that will be discussed below.

  1. *The Underlying Incident*

    Plaintiff alleges that on September 16, 2014 as she was leaving the school grounds with a large group of students she saw two people who she recognized as having hung around the school and picked fights with students in the past. ECF No. 46 at ¶¶15-28. She had been accosted by these two people in the past. Id. at 18. Plaintiff and others heard the two people plan to steal a cell phone from one of the female students of the school, and saw the male individual grab the phone and run off. Id. at 19-20. The female student whose phone was taken approached plaintiff and physically attacked her while accusing her of participating in the theft. Id. at 21-24. The next day plaintiff spoke with her counselor and explained the event from her perspective. Id. at ¶ 26. The following day, September 18, 2014 plaintiff was called to principal Anderson's office near the end of the school day and found him with defendant Sandoval and was asked to explain again what had occurred during the incident. Id. at 27-28. She took notice of the fact that neither Anderson nor Sandoval were making any notes of what she told them. Id. at ¶29. She asked to call her mother which request was denied and then defendant Sandoval handcuffed her and took her to juvenile hall where she spent 5 nights before appearing in court to hear an Attorney announce that there were to be no charges made against her. Id. at ¶¶ 30-32.

  2. *The Expulsion/Suspension*

    When plaintiff attempted to return to school after her release on September 24, defendant Anderson gave her a Notice of Suspension for 3 days which contained no date upon which she could return to school and which also indicated she was being referred to the "One Program" as an alternative placement. Id. at 37. Plaintiff and her parents requested a meeting with defendant Anderson to discuss the suspension but no meeting was held. Id. at ¶ 38. When Cara's mother attempted to drop plaintiff off at the high school she was told by defendant Anderson that plaintiff could no longer attend the school since she "left in handcuffs." Id. at 39. Plaintiff was eventually enrolled at Stockton High School, also in the District, but was ultimately dropped from enrollment because the principal there learned Cara had been referred to the County. Id. at 45. Plaintiff believes she was not accepted to County One because there were

4

never any charges or conviction involving the incident. Id. at ¶46. As a result of the foregoing chain of events Cara was unable to complete her senior year of high school, receive a diploma, or acquire an equivalent certificate from any school within the district. Id. at ¶46-49.

The foregoing allegations combined with documents attached to plaintiff's original Complaint which are discussed below in succeeding sections of this argument, and to which the parties stipulated the court could provide judicial notice, combine to meet the requirement for surviving a Rule 12(b)(6) Motion with regard to a claim of denial of procedural due process given that Cara was denied her California constitutional and statutory right to attend public school without any predeprivation process as alleged in her Second Cause of Action. Id. at ¶¶ 12-65.

    3. *The Arrest*

Cara was a minor at the time she was handcuffed by defendant Sandoval, yet her request to speak with her mother was denied and apparently her parents were given no prior notice she was being arrested and placed into confinement.

B.     <u>The Motion to Dismiss, ECF Nos. 52-1 and 52-2.</u>

The Motion of the Stockton Unified School District and principal Anderson, will be addressed collectively for the purpose of addressing their Motion insofar as they state duplicate grounds beyond failure to state a claim including: (1) No summons has been issued or served reflecting Cara as a plaintiff and (2) the action is barred by the statute of limitations. The District claims (1) it has Eleventh Amendment immunity; (2) defendant Anderson is qualifiedly immune; (3) the District defendants are immune under the Noerr-Pennington doctrine; (4) no custom or policy of the District has been plead; and (5) the plaintiff's request for punitive damages should be dismissed.

    1. *Alleged Procedural Defects*

Both the District, ECF No. 52-1 at 10, and Sandoval, ECF No. 55-1 at 4, seek to have the case dismissed due to the failure of plaintiff-to-be substituted, Cara Robinson, to comply with Federal Rule of Civil Procedure 4(a)(1), i.e., Cara was never named in the summons as a plaintiff. Defendants continue to argue that Cara cannot be substituted here at this time because the statute of limitations has run on her claim. Defendants' arguments overlook the "relation back" doctrine

in federal practice and Federal Rule of Civil Procedure 17.

Rule 4 (a)(1) provides the following:

**Contents; Amendments**
(1) Contents. A summons must:
(A) name the court and the parties;
(B) be directed to the defendant;
(C) state the name and address of the plaintiff's attorney or – if unrepresented – of the plaintiff;
(D) state the time within which the defendant must appear and defend;
(E) notify the defendant that a failure to appear and defend will result in a default judgment against the defendant for the relief demanded in the complaint;
(F) be signed by the clerk; and
(G) bear the court's seal.

The summons issued in this case identified the plaintiffs to be Ronny Robinson and Carolyn Hawkins Robinson, plaintiff Cara Robinson's parents, with no mention of Cara. ECF No. 2. In every other respect the summons conforms to the requirements of the foregoing Rule.[1] The District cites to Wasson v. Riverside County, 237 F.R.D. 423 (C.D.Cal. 2006) in support of its contention that the complaint must be dismissed because of the defect. That case addressed the failure to name a defendant in the summons and resulted in quash of the service of process as opposed to dismissing the action against the unnamed defendant both of which remedies the court held were available means to address the issue and the opined that the court had discretion to choose between the alternatives. This court has ruled in the past that it has the discretion to dismiss an action for failure to timely serve a summons at all, Lau v. Gonzales, 2006 WL 2226070 (E.D.Cal. 2006), but it is not required to do so even in that circumstance. And in Federal Rule of Civil Procedure 4(m) it is clear that the court has it within its discretion to overlook untimely service and extend the time for service.

The Fifth Circuit Court of Appeals addressed a motion to dismiss based upon the fact that the pro se plaintiff incorrectly identified the defendant in the complaint which was filed on the day the statute of limitations ran. Jackson v. Duke, 259 F.2d 3 (5th Cir. 1958). Defendant thereafter moved to dismiss the action pursuant to the statute. In Jackson the issue was the

---

[1] Earlier in the case, defendants made a motion to dismiss because the summons had not been served correctly. No such argument is made here in light of ECF No. 47.

6

misnaming of a party defendant and in addressing the motion the court noted that Rule 4(h) applied insofar as it provides that "[a]t any time in its discretion and upon such terms as it deems just, the court may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued." Id. at 6. The Ninth Circuit has applied this logic to affirm the district court's exercise of discretion to extend the normal time limit for service of summons in a situation where the Americans with Disabilities Act was the issue. Man v. American Airlines, 324 F.3d 1088 (9th Cir. 2003). Such exercises of discretion should be guided by, among other things, the strong policy that legal disputes should be settled on their merits. See, *e.g.*, Eitel v. McCool, 782 F.2d 1470 1471-1472 (9th Cir. 1986); United States ex rel. Macias v. Pacific Health Corporation, 2016 WL 8722639 *3 (C.D.Cal. 2016); U.S. v. Weldon, 2013 WL 598306 (E.D.Cal. 2013)(re factors considered in exercise of discretion re denying entry of default judgment). This public policy can, of course, be overborne by other considerations that must be weighed by a court in deciding how to exercise its broad discretion. In Villarino v. Specialized Loan Servicing, LLC, 2013 WL 12310616 (E.D.Cal. 2013) the issue was whether to dismiss a case for failure to comply with an order of the court. Id. at *1. The court laid out the factors to be applied to the court's exercise of this discretion as: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the availability of less drastic alternatives; (4) the risk of prejudice to the defendants in addition to the factor at issue here, (5) the public policy favoring disposition of cases on their merits.

The only factor of potential significance in this case beyond the public policy issue is the risk of prejudice to the defendants. Prejudice is not, however, threatened in this case insofar as the defendants had clear notice that the parents who filed the case originally were raising Cara's alleged right to procedural due process before she was prevented from exercising her constitutional and statutory right to a public education. The original complaint is replete with references to those rights albeit phrased as if they applied to the parent plaintiffs, but clearly referring to the actions taken against Cara. See, *e.g.*, ECF No. 1 at 13, 15, 17, 27-28, 29-30. Each of these references address the lack of a hearing to contest the accusations that led to Cara's

7

suspension and her ultimate exclusion from the District schools. Thus it is clear that her rights were being asserted albeit through her parents who, as pro se litigants, believed they could assert these rights on behalf of their minor child. Insofar as the parents were acting in pro se in the filing of this Complaint they were entitled to a more liberal construction of their pleading than that which is applied to a pleading prepared and filed by an attorney. See Haines v. Kerner, 404 U.S. 519, 520-521 (1972); Bailistri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1988). In affording plaintiffs the benefit of this standard of review, the court not only permitted amendment, having concluded that they stated sufficiently plausible, albeit procedurally and substantively deficient, claims but also proceeded to seek counsel to be appointed for them moving forward. ECF No. 32. This exercise of the court's permissible discretion also applied to extend other aspects of procedure as necessary to fulfill the requirements to assure that pro se plaintiffs had an adequate opportunity to amend and to proceed with their case unless no such action could cure the defects in their original effort. Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987); Franklin v. Murphy, 745 F.2d 1221, 1226-1227 (9th Cir. 1984).

Defendants also challenge the sufficiency of the summons insofar as it was not issued or served expressly on behalf of Cara and argue that the statute of limitations ran while the foregoing actions were ensuing and it is too late to correct that omission. That argument overlooks, however, the fact that when Cara was identified as a plaintiff by the factual allegations in the original Complaint, albeit not in the caption, her addition as the named plaintiff in the ultimately file Amended Complaint related back to the filing of that first Complaint, which was filed before the statute ran.[2] The fact that the delay in effecting this change resulted in the main from this court's decision that the complaint had merit but Cara could not be represented by her parents the result of which was the court's undertaking the responsibility to attempt to locate representation for her, has resonance here.

---

[2] As pointed out by plaintiff's counsel, the then plaintiffs, Ronny and Carolyn (parents), named Cara as a "defendant" in the list of defendants clearly demonstrating a desire to have Cara in the lawsuit, but not aware of how to procedurally correctly make that happen. ECF 1 at 2: "Defendant. 4" See also, the service display listing of 9/2/16 Cara as a plaintiff. See also ECF Nos. 19, 27, 28 where Cara's initials appear in the masthead along with her parents. Finally, see ECF 32 where the court recognized Cara as the real party in interest.

8

During the hearing on these motions the court pointed out that the relation back theory had application in this case and provided the defendants with some case references when counsel for the District argued that relation back only applied to newly named *defendants*. In this regard the Ninth Circuit has held as follows:

> An amendment substituting defendants relates back to the time of filing of the original complaint when: (1) the claim in the amended pleading arises out of the same conduct as that in the original pleading, and (2) the substituted party has notice and is not prejudiced by the amendment. Fed. R. Civ. P. 15(c). While Rule 15(c) speaks only of a change in defendants, it applies by analogy to the substitution of plaintiffs. Notes of Advisory Committee, Rule 15(c) (1966 Amendments), reprinted in 39 F.R.D. 69, 84 (1976). See 3 J. Moore, Moore's Federal Practice ¶ 15.15[4.2], at 15–232 (2d ed. 1982).

Raynor Bros. v. American Cyanimid Co., 695 F.2d 382, 383 (9th Cir. 1982) *citing* Staren v. American National Bank & Trust Co., 529 F.2d 1257, 1263 (7th Cir. 1976). In Staren the Seventh Circuit held that:

> The substitution of such parties after the applicable statute of limitations may have run is not significant when the change is merely formal and in no way alters the known facts and issues on which the action is based. The courts have freely upheld the filing of an amended complaint under these circumstances...." [T]he substituted corporate plaintiff had such an identity of interest with the individual plaintiffs that the original complaint served to notify defendant ... of the actual claim being asserted against it, with no resulting prejudice to its interests.

Rule 15 (c) as presently amended, takes into account the above cases by referencing "party" as opposed to "defendant."

Other cases following this relation back principle as applied to newly added plaintiffs include Bowles v. Reade, 198 F.3d 752, 761-762 (9th Cir. 1999), Williams v. United States, 405 F.2d 234 (5th Cir. 1968) and, most recently, Oreo Corp. v. Winnerman, 642 Fed.Appx. 751 (9th Cir. 2016). The language of Federal Rule of Civil Procedure 15(c)(1) itself provides, in relevant part:

> An amendment to a pleading relates back to the date of the original pleading when
> . . .
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading; or
> (C) the amendment changes the party or the naming of the party against

9

> whom a claim is asserted, if rule 15(c)(1)(B) is satisfied and if within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) Received such notice of the action that it will not be prejudiced in defending on the merits; and
> (ii) Knew or should have known that the action would have been brought against it but for a mistake concerning the proper party's identity.
>
> When the amendment proposes to add a new plaintiff, relation back is proper only when: "(1) the original complaint gave the defendant adequate notice of the claims of the newly proposed plaintiff; (2) the relation back does not unfairly prejudice the defendant; and (3) there is an identity of interests between the original and newly proposed plaintiff.

In re Syntex Corp. Sec. Litig., 95 F.3d 922, 935 (9th Cir. 1995) (*citing* Besig v. Dolphin Boating & Swimming Club, 683 F.2d 1271, 1278–79 (9th Cir. 1982).

Rule 17 dovetails with Rule 15 (c). The Raynor court pointed out that in Metropolitan Paving Co. v. International Union of Operating Engineers, 439 F.2d 300, 306 (10th Cir.), *cert. denied* 404 U.S. 829 (1971), the Tenth Circuit held that under Federal Rule of Civil Procedure 17(a) "no action should be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed for correction of the defect," and pointed to the Advisory Committee Notes regarding the 1966 amendment to the Rule. The wording of the Rule is mandatory in its prohibition - "The court may not dismiss." In the context of this case, it is clear that the time taken to substitute Cara into this action is a reasonable time given the lengthy, and finally fruitful, efforts to obtain counsel.

Therefore, the court finds that plaintiff Cara Robinson is properly substituted as a plaintiff at this time, and it will so order.

There is no need to order a summons to be reissued in her name. Rule 17 (a)(3) provides that once a party is substituted: "the action proceeds as if it had been originally commenced by the real party in interest." There is no discussion of having to recommence the lawsuit after substitution by serving a new summons—rather, "the action proceeds…". Moreover, there are no new defendant parties to be served.

Having disposed of these overarching procedural arguments brought by defendants, the

court will now move to the more specific challenges raised in their respective motions.

  2.  *Eleventh Amendment Immunity*

The District defendants assert that they are immune from this federal court action insofar as the District is an arm of the State and the State is immune pursuant to the Eleventh Amendment. The District is correct insofar as plaintiff sues the District. Belanger v. Madera Unified etc., 963 F.2d 248 (9th Cir. 1992) (school districts in California are "arms of the state"). Thus, plaintiff may not sue the District for damages, Hafer v. Melo, 502 U.S. U.S. 21, 27 (1991), and that immunity also insulates the District employee Anderson from a damages claim to the degree he is sued in an official capacity insofar as in that capacity he is not seen as a "person" amenable to suit under 42 U.S.C. section 1983, but rather as an arm of the state. Hafer, supra, 502 U.S. at 27. Employees are, however, subject to suits for damages for unconstitutional actions undertaken in their individual capacities. Id. at 21.

In an action predicated on civil rights violations, individual state actors are presumed to have been sued in their individual capacities unless there are clear indicia of the plaintiff's intent to sue them in their official capacities either by an outright assertion thereof or because they are alleged to have damaged plaintiff while enforcing a district practice, policy or procedure, rather than on their exercise of their own official powers not derived from such sources. Shoshone-Bannock Tribes v. Fish & Game Comm'n, Idaho, 42 F.3d 1278, 1284-1285 (9th Cir. 1994) *citing* Price v. Alaska, 928 F.2d 824, 828 (9th Cir. 1990), *cert. denied* 502 U.S. 967 (1994).

Finally, a state entity, sued through allegations against its employees in their official capacity, is not immune from actions seeking prospective relief as such actions are "'not treated as actions against the State.'" Id. at 828 *citing* Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985). Here plaintiffs seek injunctive relief against a District employee in his official capacity to clear Cara's school history of a suggestion of any suspension or expulsion and to assist her in getting her high school completion credentials.

Thus damages allegations against the District will be recommended for dismissal while those seeking injunctive relief will not insofar as Anderson is sued in his official capacity. To the extent employee Anderson is sued in his individual capacity, the damages claim remains.

### 3. *Cara Was Denied A Due Process Right*

The Complaint alleges that Cara is entitled to a public education under Article 9, section 1 of the California Constitution which states: "A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people the Legislature shall encourage by all suitable means the promotion of intellectual scientific, moral and agricultural improvement." In support of this goal, the Constitution further provided that "[t]he Legislature shall provide for a system of common schools by which a free school shall be kept up and supported in each district at least six months in every year . . .", id. Art. 9, § 5, and in California Education Code section 48200 the Legislature directed that "[e]ach person between the ages of 6 and 18 years . . . is subject to compulsory full-time education" and charged parents, guardians or other persons having control or charge of the pupil to ensure that these persons attended school.

In Goss v. Lopez, 419 U.S. 565, 574 (1975), the Supreme Court addressed the gravamen of state codes providing for a free education to all children in the State of Ohio and found that any student deprived of that right, even for a brief period of time, as when a suspension is instituted, was entitled to a hearing either before instituting the suspension or within a reasonable time thereafter on the basis that "[h]aving chosen to extend the right to an education to people of appellees' class generally, Ohio may not withdraw that right on grounds of misconduct absent fundamentally fair procedures to determine whether the misconduct has occurred." *Citing* Arnett v. Kennedy, 416 US. 134, 164 (1974). The Court went on to note that "if sustained and recorded those charges could . . . interfere with later opportunities for higher education and employment" among other palpable effects. Goss, supra, at 575. The Court also warned that in cases of longer suspensions or expulsions more formal procedures, perhaps even requiring that the student be permitted legal assistance, could be required depending on circumstances. Id. at 584. The Court then affirmed a district court judgment which also required expungement of the suspended student's record. Thus, there is no doubt that a due process right was involved in Cara's situation.

Once a due process right is created, "'the question remains what process is due.'" Cleveland Brd of Educ. v. Louderville, 470 U.S.532, 541 (1985). *"The answer to that question is not to be found in the [state] statute*. Id. (emphasis added). That is, federal law determines the

process that is due.  Voight v. Savell, 70 F.3d 1552, 1563 (9th Cir. 1995).

Defendants spend a good bit of argument on their view that under state law, plaintiff was not expelled (requiring a hearing), but was rather suspended or simply referred to another program (not requiring much of anything in the way of due process in their view).[3]  This

---

[3] Defendants seek to dismiss on the ground that Cara was not expelled, but was rather referred to the School Attendance Review Board pursuant to a contract signed between the District and Cara's parents on October 7, 2013.  Plaintiffs attached a copy of this contract to the operative complaint. ECF 1 at 43.  The first paragraph of that contract states as follows:

> Education Code 48263.  If any minor pupil in any district of a county is a habitual truant, or is irregular in attendance or is habitually insubordinate or disorderly during attendance at school, the pupil may be referred to a school attendance review board.  If the school attendance review board determines that available community resources can resolve the problem of the truant or insubordinate pupil, then the board shall direct the pupil or the pupil's parents or both to make use of those community resources  The school attendance review board, at any time as it determines proper, may require the pupil or parent of the pupil, or both to furnish satisfactory evidence of participation in the available community services.   (Emphasis in original.)

The education code sections following the one quoted above contain a program of progressive discipline, a potential for juvenile criminal references in extreme situations, and contemplate counseling meetings between the student, his or her parents, and the Board to establish corrective actions to assist the student to succeed in school.  In section 48267 a student may be adjudged habitually truant, insubordinate or disorderly by a juvenile court and required to attend a specific school program deemed appropriate under the circumstances of the adjudication. In sum, the SARB program is designed to keep children in the education system, not to exclude them. See Cal. Educ. Code §48200.  Nowhere in the record before the court is there evidence of a referral of Cara to SARB with the attendant steps described to be available to the Board of that entity.  The fact that Cara was referred to a program that had no room for her ultimately resulted in what amounted to an exclusion from participating in the public school system without any of the counseling and planning spoken of in the SARB contract.  On December 8, 2014, Elena Cebreros, a Student Data Technician at Stockton High School wrote to the Robinsons informing them that she had enrolled Cara at Stockton High school on October 20, 2014 but upon being notified that Cara had been referred to the County by Child Welfare and Attendance and thus she should not be enrolled, Ms. Cebreros purports to have dropped Cara from the school on October 24 and notes she missed three of the five days of school before she was dropped due either to "not attending or submitting work." ECF 1 at 84.  The plaintiffs, however, attach a To Whom It May Concern letter indicating Cara attended the school from October 20 through November 12, 2014 to which they have attached a Stockton High School Student Assignment Sheet indicating it was incepted on October 27 – 3 days after Cara was allegedly dropped -- a series of assignments completed by Cara on November 6 and 7, 2014, id. at 95-107, and attendance records from Jane Frederick High School showing Cara attended every school session between August 12, 2014 and September 23, 2014 thereby demonstrated no truancy that school year other than her absence while confined at the Juvenile Hall after arrest. Id. at 108-109.  Finally there is a letter from Dee Alimbini to the Robinsons dated December 5, 2014, indicating the District or the school is still

13

argument misses the point of the above federal case law. Plaintiff has a due process right not to be expelled *or* suspended without a modicum of process as defined by *federal* constitutional law. At the very least, plaintiff was entitled to notice of the action to be taken against her and an opportunity to be heard. According to the First Amended Complaint, the only notice plaintiff received was the click of handcuffs, and thereafter, of course, she received no hearing. Such does not count as "due process." The undersigned need not precisely detail the federal process that was due here in that defendants do not argue that. Such can be determined in further proceedings. Defendants' motion should be denied on this ground.

        4.      *The Noerr-Pennington Doctrine*

The County characterizes plaintiffs' suit as one challenging the petitioning activity of its employees that occurred when Cara was purportedly referred as a habitual truant to the SARB program. ECF 52-1 at 17:21-23. To undertake such "petitioning activity" insulates the petitioner, including any government official, from a suit emanating in reaction to that referral. Empress LLC v. City and County of San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2000). In Empress the Circuit Court explained that

> "[a]lthough the Noerr-Pennington doctrine originally immunized individuals and entities from antitrust liability, Noerr-Pennington immunity now applies to claims under § 1983 that are based on the petitioning of public authorities. . . . 'Noerr-Pennington is a label for a form of First Amendment protection; to say that one does not have Noerr-Pennington immunity is to conclude that one's petitioning activity is unprotected by the First Amendment.'"

Id. at 1056 *quoting* White [v. Lee, 227 F.3 1214] at 1231 [(9th Cir. 2000)]. In Empress a nonprofit corporation wrote to a local zoning board challenging a zoning change that had allowed development of a hotel to begin on property the corporation wished to hold for development of residential housing. When the zoning board agreed, the plaintiffs, who had invested $1.5 million in the restoration of a resort hotel on the property, sued to challenge the zoning change under

---

trying to find somewhere to place Cara so she can get a diploma or a High School Proficiency Certificate but making clear that she has to be enrolled in a school to accomplish the latter and acknowledging the failure of the District to succeed in placing her anywhere in the District. Id. at 85. As a whole, these documents support plaintiffs' contention that Cara was expelled from the entire District, if not by name at least by the *de facto* actions of the District that prevented her from completing her public school education.

section 1983, but the suit was dismissed on the immunity claim under Noerr-Pennington.

Plaintiffs dispute this contention asserting that the issue here is the suspension and de facto expulsion action taken by the District, not any petitioning action undertaken by school officials.[4] ECF 57 at 7:18-21. Thus, it is the direct action of the District that plaintiffs seek to challenge under section 1983, not any referral to SARB, if indeed there was one here.

Defendants' argument, of course, proves too much. Under their theory, whenever a state official acts without providing due process, any federal claim would be nullified by the mere "petitioning" of another allied state office, or different state authority, to take over the problem after the damage is done. Noerr-Pennington immunity does not apply in this circumstance and the motion to dismiss on that ground should be denied

5. *Defendant Anderson and Qualified Immunity from Suit*

There is no question that a public official may seek the protection of the qualified immunity principle at the outset of suit if he can prove that the actions that are being challenged were undertaken within the scope of his discretionary authority. Saucier v. Katz, 533 U.S. 194, 200-201 (2001). The doctrine "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). The doctrine therefore insulates an official for his mistakes of law, mistakes of fact, or mistakes based on mixed questions of law and fact. Groh v. Ramirez, 540 U.S. 551, 567 (2004)(Kennedy, dissenting) *quoting* Butz v. Economou, 438 U.S. 489, 507 (1978).

Defendant Anderson grounds his assertion of this protection on the fact that he had the discretionary authority to refer a student to a County SARB alternative education program. ECF 52-1 at 19:18-20. As mentioned above, however, there is no indication in the record that a referral was made to SARB or that SARB took any action. Certainly, there is no evidence at present that any of the ameliorative actions normally to be undertaken under SARB were undertaken. Rather Anderson appears to have taken the action unilaterally after conducting his

---

[4] It is also to be noted that nowhere in the myriad materials filed is there any evidence that a referral was actually made to SARB or, if it was, that SARB itself took any action whatsoever.

15

own investigation and summoning the police who, through Sergeant Sandoval, arrested Cara and took her to juvenile hall. Cara's due process rights had been long established and a reasonable school official arguably would, and should, be aware of them. Thus at this point, defendant Anderson has not met his burden to prove that he was "acting within the scope of his discretionary authority," limned as it was by statutory and constitutional principles, when he suspended Cara without notice and a hearing, and this court cannot grant him qualified immunity and should deny his motion to dismiss on that ground.

6. *Plaintiff's Prayer for Punitive Damages*

There is no doubt that a federal court may not assess punitive damages against a state governmental entity such as the District and to the degree that plaintiff is seeking such damages against the District that prayer will be dismissed. See cases cited in defendants' Motion, ECF No. 52-1, at 21:19-23. However, individual government officials sued in their personal capacities are not so insulated so long as the charged official engaged in some "'willful misconduct, or displayed that entire want of care which would raise the presumption of a "conscious indifference to consequences."'" Smith v. Wade, 461 U.S. 30, 43 (1983) *quoting* Milwaukee & St. Paul R. Co. v Arms, 91 U.S. 489 (1875). In light of the Supreme Court's holding in Smith, the Ninth Circuit developed Model Civil Jury Instruction 7.5, "which addresses punitive damages in federal civil cases. Dang v. Cross, 422 F.3d 800, 807 (2005). That instruction reads as follows:

> If you find for the plaintiff, you may, but are not required to, award punitive damages. The purposes of punitive damages are to punish a defendant and to deter a defendant and others from committing similar acts in the future.
>
> The plaintiff has the burden of proving that punitive damages should be awarded, and the amount, by a preponderance of the evidence. You may award punitive damages only if you find that defendant's conduct was malicious, or in reckless disregard of the plaintiff's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring another. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety, rights, or the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law.

Model Civ. Jury Instr. 9th Cir. 7.5 (2004). At this point in the proceedings the question of defendant Anderson's amenability to punitive damages appears to be one that will turn on the

decision of a factfinder.

Anderson clearly should have been on notice that Cara had due process rights to a contested hearing to establish her amenability to a total deprivation to her right to attend school. She told her side of the story and apparently third parties told theirs.[5] In any event, when he imposed the expulsion/suspension by refusing to allow Cara to return to school even after the responsible attorney opined before a magistrate that there was no basis upon which to charge her with anything, Anderson allegedly stated that no student who "walked out of the office in handcuffs" would be permitted to return to school. A jury could interpret this scenario as amounting to a conscious disregard for Cara's rights sufficient to sustain a punitive damage verdict. Thus the punitive damage claim against Anderson should not be dismissed.

C.  Defendant Sandoval's ["Sandoval"] Motion to Dismiss

Defendant Sandoval moved to dismiss based solely on the factors discussed above – improper summons, ECF No. 55-1 at 4:12-5-12, Cara Robinson is not a proper plaintiff, id. at 5:13-6:6, and Cara's suit is barred by the statute of limitations. Id. at 6:7-7-8. He does not challenge the contents of the complaint as insufficient.

CONCLUSION

In light of the foregoing **IT IS ORDERED** that:

1. Plaintiff Cara Robinson shall be substituted as the real party in interest pursuant to Fed. R. Civ. P 17.

**IT IS RECOMMENDED** that:

1. Defendants' Motions to Dismiss for defective summons should be DENIED;
2. Defendants' Motions to Dismiss on the statute of limitations should be DENIED;
3. Defendants' Motions to Dismiss for improper party plaintiff should be DENIED;
4. The District's Motion to Dismiss the damages claim against it should be GRANTED on Eleventh Amendment immunity grounds, but DENIED insofar as the First Amended Complaint seeks injunctive relief against defendant Anderson;

---

[5] All of the police report that may have addressed the representations of third parties that were attached to the Complaint have been redacted to the point where no facts are disclosed.

17

5. The District's Motion to Dismiss the damages claim against defendant Anderson should be DENIED;

6. The District's Motion to Dismiss the punitive damages claim against it should be GRANTED;

7. The Motion to Dismiss punitive damages against defendant Anderson should be DENIED without prejudice to a further motion.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after entry of these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 21, 2018

<u>/s/ Gregory G. Hollows</u>
UNITED STATES MAGISTRATE JUDGE